DOLLAR LAND CORPORATION, LTD., Respondent, v F. W. WOOLWORTH Co., Appellant.

First Department, June 24, 1975

*Kenneth W. Greenawalt* of counsel (*Davies, Hardy, Ives & Lawther,* attorneys), for appellant.

*Henry A. Panoff* (*Arthur J. Panoff* with him on the brief), attorney for respondent.

TILZER, J. Defendant is the lessee of a building located in a shopping center in Corpus Christi, Texas, which shopping center is owned by the plaintiff. Pursuant to article 5 of the lease between the parties the defendant was required to pay an annual minimum rent of $126,761 in equal monthly installments of $10,563.45. Article 5 also provided that such rent was payable unless it "shall be abated or diminished as in this lease elsewhere provided". Moreover, it was provided in article 5A that the defendant was to pay an additional rent equivalent to 1-½% of its annual gross sales on the first $10 million and 1% on sales over $10 million to the extent that such sum exceeded the "annual minimum rent payable" for the calendar year. It is to be noted that article 5A did not contain any provision with reference to abatement or diminishment of rent.

On August 3, 1970, a hurricane struck the Corpus Christi area causing substantial damage to the subject building. From August 3 to August 18, 1970, the premises were closed while debris was removed and temporary repairs made. Subsequently, the store was reopened, but it appears that the usable space was reduced to approximately 60 to 70% of the total demised area. The defendant continued to operate in that manner until June 16, 1971, when the repairs were completed and defendant was restored to possession of the entire prem-

ises. It also appears that beginning August 7, 1970, the defendant erected seven tents in the parking lot adjoining the demised premises from which it salvaged and sold damaged merchandise. Several of the tents remained in use until June 11, 1971. In this connection it is to be noted that pursuant to article 35 of the lease the defendant was permitted without extra charge to display and sell merchandise and services on those portions of the common facilities within 20 feet of the demised premises.

During the entire period of August 3, 1970, until June 16, 1971, defendant failed to make any rent payments, urging that by virtue of article 17 of the lease, the obligation to pay rent had ceased. Article 17, insofar as here relevant, provides as follows:

"The Landlord further agrees that if any such building is damaged or destroyed by fire or through any other cause * * * the Landlord will proceed with due diligence to repair or restore the same to the same condition as existed before such damage or destruction. * * *

"In the event of damage or destruction of the building on the demised premises all rents shall abate from the date of such damage or destruction until the Landlord has repaired or restored said building and has delivered the same to the Tenant in the manner and in the condition provided in this article."

Plaintiff urged, however, that to the extent that there was usable space, which indeed defendant did continue to occupy, rent did not cease in its entirety. It was argued in effect that the word "abate" meant "diminish" or "lessen" as opposed to "cease" or "extinguish". Accordingly, it was the plaintiff's position that defendant was obligated to pay a proportionate share of the minimum rent payable for the period involved.

The complaint sets forth five causes of action, the first three of which were the subject of plaintiff's motion for summary judgment. In the first cause of action plaintiff seeks recovery of $109,946.40, that sum representing the monthly installments of rent due under article 5 of the lease for the period beginning in August of 1970 when the store was reopened, to June 16, 1971, when the repairs were completed. In the second cause of action plaintiff seeks $42,694.01 as the percentage rent due under article 5A for the year of 1970. In the third

---

* The complaint contains a demand for recovery under the second cause of action for $42,985.81, which amount was concededly in error.

cause of action plaintiff seeks $47,348.22 as the fair and reasonable value for use and occupation of that portion of the shopping center occupied by defendant when it placed tents in the parking lot.

Special Term concluded that plaintiff was entitled to partial summary judgment on the first and second causes of action, holding that the word "abate" was intended "to relate proportionately to the extent damage or destruction affected the defendant's intended use of the store." The court reasoned that the word "abate" was ambiguous and that since defendant had supplied the form of lease used by the parties, it should be interpreted against defendant. Additionally, the court stated that its interpretation of the word "abate" was necessary in order to give reasonable meaning to the lease provisions since otherwise defendant would be given an undue advantage, having obtained the benefits of the lease while being excused from its obligations.

We disagree with Special Term's interpretation. The word "abate", when used by itself commonly means "to put an end to" or "to nullify" (*Goldstein v Loeb,* 21 Misc 72; Cf. *Hoff v Dugan,* 266 App Div 790; Black's Law Dictionary [4th ed], p 15; Webster's New International Dictionary, 2d ed; 1 CJS p 19). The authorities relied upon by the plaintiff generally relate to a situation where the words "abatement" or "abate" are used in a specialized sense (i.e., abatement of legacy), or in conjunction with limiting language. Accordingly, in sections 1700 to 1702 of the Real Property Tax Law it is made clear that "abatement" relates to the "percentage loss." Similarly, section 5-1311 of the General Obligations Law provides for abatement "to the extent of the destruction or taking". And indeed, considering article 17 in light of the other provisions of the lease, it is apparent that "abate" was intended to mean "cease." For example, in other parts of the lease where the parties intended that rent abate only proportionately, that was spelled out in clear language. In article 19, which governed condemnation of the demised premises, it was specifically stated that if the taking deprived the tenant of "part of the demised premises, rent shall in such event abate proportionately." In article 20 dealing with eminent domain there is a similar provision for reduction of rent. Indeed, article 5, which forms the basis for the first cause of action for minimum rent states that such is payable "unless such rent shall be abated or diminished as in this lease elsewhere provided".

That very clause, therefore, recognizes the difference in meaning between "abate" as compared with "diminish". We therefore conclude that article 17 is a complete defense to the first cause of action for minimum rent and that such cause of action should have been dismissed.

The second cause of action for percentage rent due under article 5A of the lease presents different considerations. That cause of action proceeds on the theory that defendant is correct in that minimum rent did abate during the period involved. Accordingly, plaintiff seeks recovery for the difference between the minimum rent which was in fact payable to August 3, 1970, i.e., $74,985.81 (minimum rent thereafter abating) and 1½% of the sales for the year 1970 (1½% of $7,845,321.06 which amounts to the sum of $117,679.82). Since under article 5A the percentage rent due was based upon the excess over the minimum rent payable and since the minimum rent payable became the amount paid up to August of 1970, the defense that rent abated is insufficient since abatement did not change the formula for computing the rent due under article 5A. Moreover, as stated earlier, article 5A, as compared with article 5, does not contain any reference at all to rent being abated or diminished as provided in other provisions of the lease. Consequently, reading article 5, article 5A, and article 17 together, we conclude that article 17 may not be asserted as a defense to the rent due under article 5A. And, if it be considered that there is any ambiguity with respect to whether rent due under article 5A may be subject to abatement as provided for in article 17, that must be interpreted against defendant, which as noted earlier, supplied the form of lease. Therefore, we conclude that summary judgment should be granted on the second cause of action in the amount of $42,694.01.

Finally, although we agree with Special Term to the extent that it denied summary judgment on the third cause of action, we believe that the affirmative defense based upon article 17 of the lease should be stricken insofar as it is interposed against that cause of action. Plaintiff by the third cause of action does not seek rent pursuant to the terms of the lease, but rather, seeks recovery for use and occupation of areas not included within the demised premises. As such, article 17 is irrelevant. However, we note, as afore-mentioned, that since article 35 did permit without additional charge use of the common facilities within 20 feet of the demised premises to

sell and display merchandise (which sales were to be included as if made in the defendant's store), recovery for use and occupation of tents erected within that 20-feet area may not be had.

Accordingly, the order entered October 1, 1974, should be modified on the law to deny plaintiff's motion for partial summary judgment on the first cause of action and to dismiss that cause of action; to direct entry of judgment on the second cause of action in the amount of $42,694.01; and to strike the affirmative defense based on article 17 of the lease to the extent that it is interposed against the third cause of action and as so modified the order should be affirmed, without costs or disbursements. Settle order.

KUPFERMAN, J. P., LUPIANO and YESAWICH, JJ., concur; MURPHY, J., votes to affirm on opinion of MANGAN, J., at Special Term.

Order, Supreme Court, New York County, entered on October 1, 1974, modified, on the law, to deny plaintiff's motion for partial summary judgment on the first cause of action and to dismiss that cause of action; to direct entry of judgment on the second cause of action in the amount of $42,694.01; and to strike the affirmative defense based on article 17 of the lease to the extent that it is interposed against the third cause of action and as so modified the order is affirmed, without costs and without disbursements.

Settle order on notice.