[805 NYS2d 585]

ALTHEA NASTASI, Respondent, v THOMAS NASTASI III, Defendant, and ARTHUR JOHANSEN et al., Appellants.

Second Department, November 14, 2005

## APPEARANCES OF COUNSEL

*Proskauer Rose, LLP*, New York City (*Elise A. Yoblonski* and *Philip M. Susswein* of counsel), for appellants.

*Carway and Flipse*, Mineola (*Daniel S. Gerson* and *Adrienne Flipse Hausch* of counsel), for respondent.

## OPINION OF THE COURT

CRANE, J.

This is an action, among other things, to impose a constructive trust. The plaintiff, a widow, is the mother of the defendant Thomas Nastasi III and the mother-in-law of the defendant Arthur Johansen. The litigation arises out of an agreement to pay the plaintiff an annuity. In connection with this agreement, the plaintiff alleges, she transferred a parcel of real property to the defendant Nastasi & Co., LLC, a limited liability company allegedly owned by Thomas Nastasi III and Johansen. Upon the commencement of this lawsuit, the plaintiff filed a notice of pendency. Johansen and Nastasi & Co., LLC (hereinafter the appellants), moved, inter alia, to compel arbitration and, in effect, to stay the action pending arbitration and, upon granting the stay, to cancel the notice of pendency. The Supreme Court granted that branch of the motion which was to compel arbitration and, in effect to stay the action, but denied that branch of the appellants' motion which was to cancel the notice of pendency and also denied their motion for leave to reargue that branch of the motion which was to cancel the notice of pendency. The appeal raises a point of first impression under CPLR 6514

(a): Does the stay, pending arbitration, of an action in which a notice of pendency has been filed mandate cancellation of the notice of pendency on the ground that the action has abated. A less than novel but nonetheless threshold point is raised by this appeal: Does the complaint state a cause of action to impose a constructive trust.

## Facts

The plaintiff was married to Thomas Nastasi, Jr., who, during his terminal illness, decided to place his shares of the family business in trust. One of the functions of the trust was to pay an annuity to him and the plaintiff during their lives. The agreement, entitled "Joint and Survivor Private Annuity Agreement," dated as of June 9, 1995, contained a broad arbitration clause. Although the plaintiff disputed that she signed that agreement and a subsequent agreement ending the trust, she did sign a "Confirmation of Private Annuity Agreement" dated as of February 5, 1997. This confirmation provided for monthly annuity payments payable to her jointly and severally by her son Thomas Nastasi III and her son-in-law Arthur Johansen of the sum of $13,750 until the later of her death or the passage of 31 years from the date of the agreement. She also signed a further agreement dated as of September 24, 1997, requiring Thomas Nastasi III and Johansen to purchase life insurance on the plaintiff's life instead of continuing to make the annuity payments following the plaintiff's death.

In another agreement also dated as of September 24, 1997, the plaintiff, as executrix of the estate of Thomas Nastasi, Jr., agreed to convey to Nastasi & Co., LLC, the building and land that Thomas Nastasi, Jr., had owned where the family business was conducted. This agreement also contained a broad arbitration clause. It mentioned nothing about the annuity, but provided that the plaintiff would share in any proceeds of the sale of the property in excess of the sum of $2,743,534, which was the outstanding balance of a mortgage assumed by Thomas Nastasi III and Johansen that encumbered the property being transferred. This agreement was consummated by deed to Nastasi & Co., LLC, dated October 30, 1997.

The plaintiff commenced this action claiming that the individual defendants never made any annuity payments. She alleged causes of action to recover damages for breach of contract and fraud, to appoint a receiver for the real property, and to impose a constructive trust over the real property. Our focus is

on the cause of action to impose a constructive trust, which alleged that the parties to the annuity were in a confidential relationship and that the real property was part of the "exchange" for the annuity. The plaintiff averred that the retention of the realty without payment of the annuity abused the confidential relationship and warranted the imposition of a constructive trust.

Further focus on this cause of action is furnished in the plaintiff's opposition to the appellant's motion, inter alia, to cancel the notice of pendency. She stated:

> "The building was then worth far more than the existing mortgage. I was led to believe that this building would soon be sold and I would not only realize a profit, but [Thomas Nastasi III and Johansen] would have a new source of funds to assure that they met their obligation to provide me with the monthly payments I was promised but had yet to receive."

She continued by suggesting that the arbitrator would have to determine her rights to the return of the property or its use as security for the annuity payments. She complained that she was induced to turn over the business and the realty to the defendants by way of a fraud.

While the defendant Thomas Nastasi III had not yet appeared in the action, the appellants moved before answering to compel arbitration pursuant to CPLR 7503 (a), in effect, to stay the action, and to cancel the notice of pendency or, in the alternative, to dismiss for insufficiency the second (constructive trust), third (receivership or return of property) and fourth (fraud) causes of action and to cancel the notice of pendency. The Supreme Court, without addressing the sufficiency of the causes of action in the verified complaint, directed the parties to proceed to arbitration but declined to cancel the notice of pendency. It also found no basis for discretionary cancellation as in an action filed without good faith, and the court rejected the appellants' reliance on CPLR 7502 (c), which authorizes injunctions and attachments in aid of arbitration, as requiring the cancellation of an existing notice of pendency.

## Requirements For Filing and Cancelling a Notice of Pendency

A notice of pendency is authorized to be filed in an action seeking a judgment that would affect the title to, or possession, use, or enjoyment of, real property (*see* CPLR 6501; *5303 Realty*

*Corp. v O & Y Equity Corp.*, 64 NY2d 313, 320 [1984]; *Sansol Indus. v 345 E. 56th St. Owners*, 159 Misc 2d 822, 823 [1993]). An action seeking to impose a constructive trust over real property qualifies as one in which the filing of a notice of pendency is allowed (*see Letizia v Flaherty*, 207 AD2d 567, 569 [1994]; *Peterson v Kelly*, 173 AD2d 688, 689 [1991]).

Cancellation of a notice of pendency can be granted in the exercise of the inherent power of the court where its filing fails to comply with CPLR 6501 (*see 5303 Realty Corp. v O & Y Equity Corp.*, supra at 320-321; *Rose v Montt Assets*, 250 AD2d 451, 451-452 [1998]; Siegel, NY Prac § 336 [4th ed]). In addition, the statutory grounds of mandatory and discretionary cancellation are available to a party aggrieved by the filing of a notice of pendency (*see* CPLR 6514 [a], [b]). In the context of the case at bar, the appellants invoked the mandatory cancellation power due to the alleged "abatement" of the action owing to its stay pending arbitration (*see* CPLR 7503 [a]), and discretionary cancellation owing to the alleged commencement of the action in bad faith.[1] When the court entertains a motion to cancel a notice of pendency in its inherent power to analyze whether the pleading complies with CPLR 6501, it neither assesses the likelihood of success on the merits nor considers material beyond the pleading itself; "the court's analysis is to be limited to the pleading's face" (*5303 Realty Corp. v O & Y Equity Corp.*, supra at 321; *see Sansol Indus. v 345 E. 56th St. Owners*, supra at 823).

## Constructive Trust

■ Our focus, therefore, turns to whether the verified complaint states a cause of action that complies with CPLR 6501. The second cause of action[2] purports to state a claim to impose a constructive trust over the real property that the

---

1. In discussing the Supreme Court's determination in the case at bar rejecting mandatory cancellation, Professor Vincent C. Alexander observed that "an action stayed for the purpose of arbitration technically is still pending" during arbitration—a loophole at odds with the intent of CPLR 7502 (c) and unforeseen by its drafters (Alexander, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C6514:1, 2005 Pocket Part, at 239). Professor Alexander also rationalized the denial of discretionary cancellation because the "plaintiff appears to have commenced the action in good faith based on an argument that the relevant arbitration agreement was invalidated by defendant's fraud" (*id.*).

2. We have no need to analyze the third cause of action to the extent it seeks the appointment of a receiver because receivership under CPLR article 64 is merely a provisional remedy. So also is the notice of pendency under

plaintiff, as executrix of the estate of Thomas Nastasi, Jr., conveyed to Nastasi & Co., LLC.

In order to state a cause of action to impose a constructive trust, a plaintiff must allege "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment" (*Sharp v Kosmalski*, 40 NY2d 119, 121 [1976]; *see Simonds v Simonds*, 45 NY2d 233, 241-242 [1978]; *Weiss v Weiss*, 186 AD2d 247, 249 [1992]; *cf. Modica v Modica*, 15 AD3d 635 [2005]; *Cerabono v Price*, 7 AD3d 479, 480 [2004]; *Levy v Moran*, 270 AD2d 314, 315 [2000]; *Ostreicher v Ostreicher*, 238 AD2d 392, 393 [1997]).

The second cause of action alleges that the parties were in a confidential relationship, that the individual defendants promised to pay the plaintiff an annuity, and that in exchange for this promise the plaintiff conveyed the realty (the subject of the notice of pendency), which was to be used as security for the payment of the annuity. There is no allegation in the second cause of action of unjust enrichment,[3] but only an allegation that the confidential relationship was the cause of the real property transfer, and that the retention of the realty abused the relationship. Thus, considered alone, the second cause of action is insufficient to state a cause of action to impose a constructive trust. Yet, that is not the end of the inquiry.

The third cause of action incorporates all of the allegations that precede it, and within this cause of action is found the allegation that the "[D]efendants" have been unjustly enriched by the retention of the real property. True, the third cause of action asks for the appointment of a receiver or the return of the realty. But, a pleading is to be construed to allege whatever can be fairly implied on any aspect of the facts, and will not be subject to dismissal for demanding inappropriate relief (*see Dulberg v Mock*, 1 NY2d 54, 56 [1956]; *State of New York v Schenectady Chems.*, 117 Misc 2d 960, 968 [1983], *mod on other grounds* 103 AD2d 33 [1984]). Consequently, the verified complaint does set forth the necessary elements of a cause of action to impose a constructive trust.

---

CPLR article 65, and the plaintiff may be required to elect between them (*see* CPLR 6001).

**3.** This failure to allege unjust enrichment is compatible with the transaction in which the estate conveyed the building and land. Nastasi & Co., LLC, the transferee, paid valuable consideration for the property in the form of assuming existing debt of $2,743,534. But, we are reminded that we cannot look to this underlying contract but must limit our analysis to the face of the pleading (*5303 Realty Corp. v O & Y Equity Corp., supra* at 321).

The appellants, citing *Mantia v Squire* (289 AD2d 304, 305 [2001]), argue, nonetheless, that the allegations are insufficient because they omit any claim that "the defendant," presumably Nastasi & Co., LLC, the grantee, made any promise to reconvey. Indeed, that element is stated in *Mantia*. The appellants fail to acknowledge, however, that *Mantia* represents a subspecies of the doctrine of constructive trust in which the defendant has received a transfer of the property on a promise to reconvey it to the plaintiff upon the occurrence of a certain contingency (*see e.g. Hightower v Reid*, 5 AD3d 440 [2004] [after defaulting on her mortgage the plaintiff conveyed her property for the purpose of obtaining refinance on a promise to transfer the property back immediately following the closing of the new financing]; *Weiss v Weiss, supra* [a grandmother transferred her apartment to her son on the promise that when his daughter became 18 years old he would transfer it to the daughter]). There are other applications of the doctrine of constructive trust that do not require a promise to retransfer real property (*see e.g. Simonds v Simonds, supra* [establishing a constructive trust over the proceeds of life insurance in favor of a former spouse against the recipients, the second spouse and her daughter]; *Sharp v Kosmalski, supra* [erecting a constructive trust over a farm the plaintiff had transferred to his paramour on the implied promise that he could continue to live there and operate the farm]).

The doctrine of constructive trust is not limited to that subspecies, but is given broad scope to flex in response to all human implications of the transaction, to remedy whatever knavery ingenious wrongdoers can invent, to give expression to the conscience of equity, and to satisfy the demands of justice (*see Simonds v Simonds, supra* at 239, 241; *Sharp v Kosmalski, supra* at 123; *Latham v Father Divine*, 299 NY 22, 27, 29 [1949], *rearg denied* 299 NY 599 [1949]; *cf. Lipton v Donnenfeld*, 5 AD3d 356, 357-358 [2004]; *Levy v Moran, supra* at 315). Accordingly, the appellants' additional objections, that the transfer was from the estate of Thomas Nastasi, Jr., and that the grantee, Nastasi & Co., LLC, paid consideration, either fail to capture the spirit of equity that infuses the remedy of constructive trust or invoke matter beyond the face of the pleading in contravention of the admonition in *5303 Realty Corp. v O & Y Equity Corp. (supra)*. Likewise, to the extent that the appellants rely on the plaintiff's affidavit in opposition to their motion, they are going beyond the face of the pleading (*id.*). Finally, the appellants argue that

the plaintiff had no title to the real property. This ignores the allegation in the complaint that this property would be used as security for the payment of the plaintiff's annuity, and we are limited to the face of the pleading (*see 5303 Realty Corp. v O & Y Equity Corp., supra* at 321). Thus, the cases barring a constructive trust claim where the plaintiff has no interest in the real property (*see e.g. Bontecou v Goldman*, 103 AD2d 732, 733 [1984]; *Scivoletti v Marsala*, 97 AD2d 401, 402 [1983]) have no application here. A constructive trust may be imposed by a party who has less than actual title (*see Washington v Defense*, 149 AD2d 697, 698 [1989]).

Therefore, the Supreme Court properly denied that branch of the appellants' motion which was to cancel the notice of pendency as unauthorized under CPLR 6501. Consequently, we turn to consider whether mandatory or discretionary cancellation pursuant to CPLR 6514 was appropriate.

## CPLR 6514 Cancellation

■ CPLR 6514 (a) mandates cancellation of a notice of pendency if the action has been "settled, discontinued or abated." The appellants contend that when the Supreme Court granted that branch of their motion which was to compel arbitration, and, in effect, stay the action, the action was abated. They also argue in a somewhat related vein that, since the only provisional remedies authorized in aid of arbitration are injunction and attachment (*see* CPLR 7502 [c]), the notice of pendency in this action is unauthorized.[4]

No case has been located addressing the concept of abatement in relation to the mandatory cancellation of a notice of pendency while the action has been stayed pending arbitration (*cf. Freidus v Sardelli*, 192 AD2d 578, 580 [1993] [discontinued]; *Schechter v Rosen*, 8 Misc 2d 635, 637 [1957] [satisfaction of mortgage destroys cause of action to foreclose it; the "cause of action came to an end and abated as it did not survive the oc-

---

4. The appellants relied in support of reargument below on the legislative history of CPLR 7502 (c) in which the Advisory Committee on Civil Practice stated that receivership and lis pendens would not be available in connection with an arbitration. Since the order denying reargument is not appealable, this submission is not properly before us. Were we to agree with the appellants that CPLR 7502 (c) swallows the notice of pendency in an action stayed pending arbitration, we would consider delaying the cancellation of the notice of pendency to afford the plaintiff an opportunity to make an application for an injunction or attachment in aid of arbitration (*see Chateau Rive Corp. v Riverview Partners, LP*, 18 AD3d 492 [2005]).

currence of such event, to wit, the discharge and cancellation of the mortgage"]). The appellants rely on Black's Law Dictionary, which defines abatement as a "suspension or defeat of a pending action" (Black's Law Dictionary 3 [8th ed 2004]). Black's Law Dictionary, however, also contains the following quotation from 1 Am Jur 2d, Abatement, Survival, and Revival § 3:

> "Although the term 'abatement' is sometimes used loosely as a substitute for 'stay of proceedings,' the two may be distinguished on several grounds. For example, when grounds for abatement of an action exist, the abatement of the action is a matter of right, but a stay is granted in the court's discretion. And in proper circumstances a court may stay a proceeding pending the outcome of another proceeding although a strict plea in abatement could not be sustained" (Black's Law Dictionary, *supra*).

The word abate has been commonly interpreted to mean "to put an end to" or "to nullify" (*Dollar Land Corp. v Woolworth Co.*, 48 AD2d 373, 376 [1975]; *People v Ekinici*, 191 Misc 2d 510, 516 [2002]). "Under the common law, the abatement of an action is the entire overthrow or destruction of the action, which results when the defendant pleads a matter that defeats the action, either for the time being or permanently. An action which has abated is dead, and any further enforcement of the cause of action requires the bringing of a new action, provided that a cause of action remains" (2A Carmody-Wait 2d § 11.1).

The concept of abatement is known elsewhere in the CPLR. For example, CPLR 6224 provides that an attachment is annulled, inter alia, "when the action in which it was granted abates or is discontinued." This "abatement" is equated with the action ceasing (*see* 12 Weinstein-Korn-Miller, NY Civ Prac ¶ 6224.02, at 62-260 [2d ed]). Similarly, CPLR 1015 (b) provides that upon the death of a party "in an action in which the right sought to be enforced survives only to the surviving plaintiffs or against the surviving defendants, the action does not abate" (*cf. People v Matteson*, 75 NY2d 745, 747 [1989]; *People v Mintz*, 20 NY2d 753, 754 [1967] [prosecution of criminal action abates when defendant dies, even if appeal pending]).

The appellants claim that the relief they obtained under CPLR 7503 (a) to compel the arbitration of the plaintiff's causes of action, in effect, stayed the pending action in court. Indeed, it did that. But, this does not mean that the action is dismissed, and in that sense, abated. "An agreement to arbitrate is not a

defense to an action. Thus, it may not be the basis for a motion to dismiss. . . . [T]he appropriate remedy is a stay of the judicial proceeding" (*Allied Bldg. Inspectors Intl. Union of Operating Engrs., Local Union No. 211, AFL-CIO v Office of Labor Relations of City of N.Y.*, 45 NY2d 735, 738 [1978] [citations omitted]; *see Blatt v Sochet*, 199 AD2d 451, 453 [1993]). In fact, once the arbitration proceeds and the arbitrator renders an award, either party may then move in the previously stayed judicial action to confirm, vacate, or modify the award (*cf. Matter of Gleason [Michael Vee, Ltd.]*, 96 NY2d 117, 121-122 [2001]). Accordingly, the Supreme Court correctly denied the branch of the appellants' motion that sought mandatory cancellation of the notice of pendency on the ground that the action had abated.

The appellants' related argument that CPLR 7502 (c) required cancellation of the notice of pendency because it omits this provisional remedy from those available in aid of arbitration need not detain us. Suffice it to say that the plaintiff did not seek any provisional remedy in aid of arbitration, so CPLR 7502 (c) does not apply here. We agree with Professor Alexander (*see* n 1) that the availability of a notice of pendency in an action stayed pending arbitration is, perhaps, a loophole not intended or foreseen by the drafters of that provision.

This brings us to a consideration of the discretionary cancellation provision of CPLR 6514 (b). This subdivision permits, but does not require, cancellation of a notice of pendency "if the plaintiff has not commenced or prosecuted the action in good faith." Where a plaintiff is using the notice of pendency for an ulterior purpose, a finding of lack of good faith can be made (*see e.g. Weisinger v Rae*, 19 Misc 2d 341, 351 [1959]). However, we conclude that the Supreme Court providently exercised its discretion in declining to cancel the notice of pendency on this ground.

The appellants, in the context of the good faith requirement, raise a policy argument. They contend that a plaintiff files a notice of pendency in bad faith when he or she blatantly disregards a broad and valid arbitration agreement by bringing his or her claims in the form of a lawsuit. In an appropriate case, of course, this could evidence an ulterior purpose that would invoke the court's discretionary power to cancel the notice of pendency. Yet, the plaintiff at bar can escape the accusation of bad faith on the theory that the defendants' fraud vitiated their agreements including the arbitration clause (*see Matter of Weinrott [Carp]*, 32 NY2d 190, 197-198 [1973]; Siegel, NY Prac § 589, at

1034-1035; Alexander, Supp Practice Commentaries, *supra*). Thus, the Supreme Court providently exercised its discretion in denying that branch of the appellants' motion which was to cancel the notice of pendency under CPLR 6514 (b).

The appellants' remaining contentions are without merit.

Accordingly, the order dated December 18, 2003, is affirmed insofar as appealed from, the appeal from the order dated January 30, 2004, is dismissed on the ground that no appeal lies from an order denying leave to reargue, and one bill of costs is awarded to the plaintiff.

COZIER, J.P., LUCIANO and SKELOS, JJ., concur.

Ordered that the appeal from the order dated January 30, 2004, is dismissed, as no appeal lies from an order denying reargument; and it is further,

Ordered that the order dated December 18, 2003, is affirmed insofar as appealed from; and it is further,

Ordered that one bill of costs is awarded to the plaintiff.