Brian T. HECK, Appellant,

v.

William C. ADAMSON, Appellee.

No. 06–CV–1461.

District of Columbia Court of Appeals.

Argued Jan. 16, 2008.
Decided Jan. 31, 2008.

Thomas E. Lester, with whom Calvin Steinmetz was on the brief, for appellant.

Mindy A. Daniels, for appellee.

Before FARRELL and GLICKMAN, Associate Judges, and FERREN, Senior Judge.

1029

**FARRELL, Associate Judge:**

Heck has sued Adamson, with whom he claims he formerly owned a house on P Street, N.W., for conversion, fraud, and breach of contract arising from Adamson's alleged refusal to pay Heck his rightful share of the proceeds from the sale of the house in 2005. Of particular importance here, Heck seeks imposition of a constructive trust on a property located at 2332 Naylor Road, S.E., which he claims Adamson bought and partly renovated using proceeds from the sale of the P Street house. Simultaneously with the suit, Heck filed and recorded with the Recorder of Deeds a notice of pendency of action, or *lis pendens,* under D.C.Code § 42–1207 (2001), referencing the underlying action. The trial court, however, has since granted Adamson's motion to "cancel and release" the notice of *lis pendens,* and the single issue before us on this interlocutory appeal, *see McAteer v. Lauterbach,* 908 A.2d 1168 (D.C.2006), is the correctness of that ruling. We hold that, even if a trial court retains common-law authority to order a *lis pendens* notice cancelled before judgment in exceptional circumstances, the reasons given by the trial court in this case do not justify that action. We therefore reverse and direct reinstatement of the notice.

**I.**

Heck's complaint does not dispute the propriety of the sale of the P Street property that he contends the parties jointly owned. Rather, his request for a constructive trust seeks to "follow the money," as he alleges that "Adamson's continued ownership interest of the Naylor Road property is an unjust enrichment, garnered by his fraudulent and tortious avoidance of Heck's legal and equitable interest in the proceeds from the sale of the [P Street p]roperty." As relief Heck seeks, *inter alia,* "disgorge[ment of] any profit or increase in value accrued as a result of [Adamson's] use of [converted] funds ... utilized towards the purchase or renovation" of the Naylor Road property, and, if necessary, "the immediate sale" of that property to satisfy the damages. Trial of these allegations is currently set for February 2008.

**II.**

"A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if permitted to retain it." *Gray v. Gray,* 412 A.2d 1208, 1210 (D.C. 1980) (quoting 4A POWELL ON REAL PROPERTY § 594, at 48–3 and 48–4 (1979)). The first question we must decide is whether Heck's claim of an "equitable" interest in the Naylor Road property arising from the alleged conversion met the statutory condition for filing of a *lis pendens* notice. We conclude that it did. A *lis pendens* notice, designed to enable "interested third parties to discover the existence and scope of [pending] litigation" affecting property, *1st Atlantic Guaranty Corp. v. Tillerson,* 916 A.2d 153, 157 (D.C.2007),[1] may be filed regarding "[t]he pendency of an action ...

---

1. The legal effect of *lis pendens* at common law, and under § 42–1207, is that "nothing relating to the subject matter of the suit [can] be changed while it [is] pending and one acquiring an interest in the property involved therein from a party thereto [takes] such interest subject to the parties' rights as finally determined, and [is] conclusively bound by the results of the litigation." *Tillerson,* 916 A.2d at 156 (quoting *First Md. Fin. Servs. Corp. v. District–Realty Title Ins. Corp.,* 548 A.2d 787, 791 (D.C.1988)). On the other hand, *lis pendens* "is still only a notice," *Kerns v. Kerns,* 53 P.3d 1157, 1164 n. 6 (Colo. 2002); "[u]nlike a lien, a person obtains no new property interest through the operation of the *lis pendens* doctrine." 14 POWELL, *supra,* at 82A–4.

affecting the title to or asserting a mortgage, lien, security interest, *or other interest in real property* situated in the District of Columbia." Section 42–1207(a) (emphasis added). On its face, Heck's action asserting an equitable interest in the Naylor Road property *via* a constructive trust is *an* "interest in real property," which is all the statute requires. Moreover, it has been recognized generally that "[*l*]*is pendens* . . . applies to actions seeking creation of a constructive trust on specific property," 14 POWELL ON REAL PROPERTY § 82A.02 [4][a], at 82A–16 (2000) (citing cases), though such actions affect property "indirectly" by requiring the judgment-defendant "to transfer specific property *in some form* to the plaintiff, the beneficiary . . . of the trust." *Kerns, supra* note 1, 53 P.3d at 1165 (emphasis added; citation and quotation marks omitted). The statute thus entitled Heck to file a notice of *lis pendens*.

■ The main question for decision is what circumstances permit a trial court to order cancellation of a *lis pendens* notice properly filed. The text of § 42–1207 states only one such circumstance, namely: "(d) If judgment is rendered in the action or proceeding against the party who filed the notice of the pendency, the judgment shall order the cancellation and release of the notice at the expense of the filing party. . . ." The statute, by its terms, thus envisions that the notice will remain in effect until judgment on the underlying action is rendered.[2] Perhaps equally important, it specifies the remedy for the misuse of *lis pendens* during an unsuccessful action affecting property by providing that, "[w]hen appropriate, the court may also impose sanctions for the filing." *Id.* So, for example, where the common law permitted cancellation of a *lis pendens* notice (or, alternatively, relieved a purchaser of the effect of *lis pendens* as notice) if the suit was not "prosecuted in good faith, with all reasonable diligence and without unnecessary delay," *Corey v. Carback,* 201 Md. 389, 94 A.2d 629, 637 (1953); *see generally* 14 POWELL, *supra,* at 82A–24, section 42–1207(d) appears instead to penalize such abuses by means of post-judgment sanctions. In important respects, at least, "common law *lis pendens* . . . [has been] overruled by the passage of D.C.Code § 42–1207." *Trustee 1245 13th Street, N.W. # 608 Trust v. Anderson,* 905 A.2d 181, 185 (D.C.2006). In these circumstances, we might well be justified in concluding that, before judgment is rendered in the action or proceeding, the trial court enjoys no authority to order cancellation of a *lis pendens* notice.

We need not decide that much, however, to conclude that the cancellation order in this case is unwarranted. Professor Powell implies that only "unusual circumstances" ought to justify an order to release a *lis pendens* notice before judgment, 14 POWELL, *supra,* at 82A–24; and we agree that, at a minimum, any "equitable" power the court has to act before judgment must be exercised parsimoniously. The trial court gave essentially three reasons here for ordering cancellation in the exercise of its perceived "power in equity" (J.A. 120). First, after hearing argument from the parties, the court was not convinced that Heck had "shown prima facie evidence of [entitlement to] a constructive [trust]" in regard to the Naylor Road property, chiefly because whether Heck indeed ever held title to the P Street house was an issue "up in the air." But, as Heck points out, substantial authority at common law holds that "upon a motion to

---

**2.** Even then, "[i]n a case in which an appeal from such judgment would lie, the prevailing party shall not record the judgment until after the expiration of the latest" of three enumerated conditions. Sections 42–120(d)(1–3).

cancel or discharge a *lis pendens*, the court may not consider anything other than whether the complaint sufficiently states a cause of action to impress a [constructive] trust." *Polk v. Schwartz*, 166 N.J.Super. 292, 399 A.2d 1001, 1004 (1979); *see also, e.g., Nastasi v. Nastasi*, 26 A.D.3d 32, 805 N.Y.S.2d 585, 589 (2005) ("When the court entertains a motion to cancel a notice of pendency . . . it neither assesses the likelihood of success on the merits nor considers material beyond the pleading itself; the court's analysis is to be limited to the pleadings' face."). The strength or weakness of Heck's claim that Adamson defrauded him of or converted the proceeds of the P Street sale is not before us; for present purposes, it is enough that Adamson has not shown that Heck failed to state a claim concerning either tort alleged (or breach of contract) or for entitlement to a constructive trust. *See generally* RESTATEMENT OF THE LAW: RESTITUTION § 202, at 821 cmt. c (1937) (a "person whose property is wrongfully used in acquiring other property can by a proceeding in equity reach the other property"; "[t]he wrongdoer holds the property so acquired upon a constructive trust for the claimant"). Adamson remains free, nonetheless, to offer reasons in the underlying action why a constructive trust is inappropriate. *See Polk*, 399 A.2d at 1005.

Second, the trial court believed that a *lis pendens* notice was unnecessary because, at the hearing, it had obtained from Adamson an agreement not to "transfer[ ] this property to a third person without [first]

notifying the court and plaintiff's counsel" (J.A. 121)—though Adamson *could*, as he desired to do, pursue a home equity loan on the property to make needed renovations (J.A. 116). But, aside from the fact (as Heck's counsel pointed out) that a loan itself that was secured by the Naylor Road property would potentially compromise Heck's claimed interest in the property, an informal, makeshift arrangement of the kind the court thought equitable is no substitute for the statutory protection that *lis pendens* is meant to afford plaintiffs such as Heck.

Finally, the trial court appeared sympathetic to the position taken by a Superior Court judge in another case that *lis pendens* is "[inappropriate] where there is a money remedy available" (J.A. 106). To the extent we understand this reasoning,[3] it was that Heck would not be entitled to a constructive trust without first showing that his legal remedies—*i.e.*, damages for conversion, breach of contract, etc.—were inadequate, and that since he had not made that showing so far, *lis pendens* would be inequitable by unnecessarily clouding Adamson's title. This, however, again confuses the evidentiary merits of Heck's request for a constructive trust with his entitlement to seek the aid of the *lis pendens* statute. Whether or not Heck has need of—or is even entitled to—imposition of a constructive trust must be resolved within the framework of the underlying suit.[4] A forecast that he will have no need of equitable relief to secure any money damages he wins is both speculative at

---

3. The trial court cited to *McAteer, supra*, in which this court quoted the reasons stated by the trial judge there for having ordered cancellation of a *lis pendens* motion before trial of the action. We expressed no opinion on the soundness of those reasons, holding only that the judge's order was appealable interlocutorily. *See* 908 A.2d at 1170.

4. If Heck's complaint sought only monetary damages not affecting, even potentially, title to real estate, discharge of the *lis pendens* notice would be proper, *see Garcia v. Brooks St. Assocs.*, 209 Conn. 15, 546 A.2d 275, 278 (1988); but Adamson cites no authority permitting a court to weigh the adequacy of remedies before adjudicating the merits when, as here, a constructive trust affecting the title to realty has been sought.

this point and inadequate legally to justify cancelling the safeguard § 42–1207 affords his interest in the Naylor Road property.

*Reversed and remanded with directions to reinstate the notice of lis pendens.*