*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

## Nos. 19-CV-1162 & 20-CV-0422

KING CARPENTRY, INC., APPELLANT

V.

1345 K STREET SE, LLC;
ADI CONSTRUCTION OF VIRGINIA, LLC;
GREAT AMERICAN INSURANCE COMPANY, APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(CAB7636-18 & CAB7634-19)

(Hon. Fern Flanagan Saddler & Hon. Jason Park, Trial Judges)

(Argued September 16, 2021                    Decided November 4, 2021)

*Stephen M. Seeger*, with whom *Alexandra E. Busch* was on the brief, for appellant.

*Alexia Kent McClure*, with whom *Deanna L. Peters*, of the bar of the State of Virginia, *pro hac vice*, by special leave of court, was on the brief, for appellee ADI Construction.

*J. Andrew Baxter* for appellee 1345 K St SE, LLC.

*Eric G. Korphage* for appellee Great American Insurance Company.

Before GLICKMAN, EASTERLY, and DEAHL, *Associate Judges*.

EASTERLY, *Associate Judge*:  In these consolidated appeals, we analyze the distinction between mandatory and permissive forum selection clauses.  We also examine the Subcontractor's Lien statute, D.C. Code § 40-303.01 et seq. (2012 Repl.), to determine whether certain procedural requirements ensuring notice of encumbrances on real property apply when a lien on the property has been released and replaced with an undertaking.  We conclude that the trial court dismissed King Carpentry's complaint based on an incorrect analysis of both of these issues in the first order on appeal in 19-CV-1162, and we reverse and remand for further proceedings consistent with this opinion.  And because our reversal of the first judgment strips it of any res judicata effect, we likewise reverse the second order on appeal in 20-CV-422 dismissing King Carpentry's complaint on res judicata grounds.

## I. Facts and Procedural History

1345 K Street SE, LLC, the owner and developer of the property at that address in the District, hired ADI Construction of Virginia to serve as the general contractor on a condominium project at that location.  ADI hired King Carpentry as a subcontractor for rough carpentry and framing.  ADI and King Carpentry signed a

contract with a forum selection clause stating that the parties "consented to personal jurisdiction and venue, for any action arising out of breach or threatened breach of this Agreement in the Circuit Court in and for Fairfax County, Virginia." During the project, they had disagreements about the scope of work and compensation. When King Carpentry did not get paid the amount it thought it was due, it filed a Notice of Mechanic's Lien against the development property with the District's Recorder of Deeds pursuant to a section of the District's Subcontractor's Lien statute, D.C. Code § 40-303.03.

After the recordation of the mechanic's lien, 1345 K Street SE and ADI filed a "Consent Petition for Approval of Written Undertaking to Release Mechanic's Lien" pursuant to D.C. Code § 40-303.17; *see also* D.C. Code § 40-303.16. In the consent petition, they asked the Superior Court to approve the substitution of a bond issued to them by Great American Insurance Company ("GAIC") as security for any judgment against the property,[1] direct recordation of the undertaking, and order

---

[1] The Bond, signed by representatives from 1345 K Street SE and ADI, acknowledged both the existence of King Carpentry's mechanic's lien and the ability under the District's Subcontractor's Lien statute to discharge the lien upon filing of an undertaking and bond. It then stated that:

> Effective upon approval . . . by the Superior Court of the District of Columbia and recordation of an undertaking by Principals with the Recorder of Deeds for the District of Columbia, in the event that any final judgment is entered by

"release [of] the [p]roperty from the lien filed by . . . King Carpentry." The Superior Court granted the petition and issued an order approving the undertaking and bond, directing recordation, and "decree[ing] that upon the recording of such undertaking, the property . . . shall forthwith stand released from the lien of Respondent King Carpentry."

King Carpentry subsequently filed a complaint in D.C. Superior Court, alleging "Breach of Contract against ADI" and "Enforcement of Mechanic's Lien Against Undertaking against 1345 K St[reet SE], ADI, and GAIC." ADI filed a motion to dismiss the complaint[2] arguing that (1) the contract claim should be dismissed because its contract with King Carpentry contained a forum selection clause designating Fairfax County, Virginia as the exclusive forum to litigate disputes and King Carpentry had filed his complaint in the District and (2) the mechanic's lien claim should be dismissed because King Carpentry had failed to follow the requisite procedures of the Subcontractor's Lien statute, specifically by

---

the Superior Court . . . adjudicating said lien to be valid and *determining the amount which the same would have been enforceable against the property affected thereby*, together with such costs and interest as may be awarded, shall be fully satisfied . . . . (emphasis added).

[2]  After 1345 K Street SE obtained the undertaking with ADI, ADI appeared to take the lead in litigating this matter in the trial court. Continuing in that role on appeal, ADI filed an appellee's brief that 1345 K Street SE joined in full.

failing to file a notice of *lis pendens* with its complaint and by failing to notify other lienors of the action.  In opposition to the motion, King Carpentry argued that (1) the forum selection clause was permissive and not mandatory, and (2) the procedures that King Carpentry had allegedly failed to follow did not apply to suits such as King Carpentry's where the lien had been discharged prior to the initiation of a suit.  The trial court (Saddler, J.) granted ADI's motion in a short order with only two paragraphs of analysis that did not address King Carpentry's arguments in any detail.

Following the trial court's dismissal of King Carpentry's complaint, King Carpentry filed a second complaint, seeking a judgment against ADI and GAIC on the amount of the bond issued by GAIC as security of any judgment against the property.  ADI and GAIC moved to dismiss on res judicata grounds, and the trial court (Park, J.) granted the motion.  King Carpentry timely appealed both orders.

## II.  Whether the Contract Claim was Properly Dismissed Pursuant to the Forum Selection Clause in the Contract

The trial court dismissed King Carpentry's breach of contract claim against ADI on the ground that King Carpentry and ADI "specifically negotiated the . . . forum selection clause." This court has held that forum selection clauses are permissible so long as (1) the existence of such a clause is reasonably communicated

to the plaintiff and (2) enforcement would not be unreasonable. *Forrest v. Verizon Communications, Inc.,* 805 A.2d 1007, 1010–11 (D.C. 2002). King Carpentry has not challenged the instant forum selection clause on either ground. Instead, it argues that the forum selection clause in its contract with ADI merely permits litigation in Fairfax County; it does not require litigation in that forum. The trial court rejected this argument and ruled that the clause in the ADI-King Carpentry contract expressed "a clear intention to litigate any breach or threatened breach of the subject agreement in the Circuit Court for Fairfax County, Virginia." We review the trial court's interpretation of the forum selection clause de novo. *Parker v. K & L Gates, LLP*, 76 A.3d 859, 864–65 (D.C. 2013).

Absent a forum selection clause, a plaintiff is free to sue wherever they can satisfy the requisite jurisdictional requirements. *See* Restatement (Second) of Conflict of Laws § 80 cmt. a (Am. Law Inst. 1988). Thus, it is critical to determine precisely what parties have contracted for when they agree to a forum selection clause. In particular, courts reviewing such clauses must determine whether the clause "authorizes another forum as an *alternative* to the forum of the litigation or whether it makes the designated forum *exclusive*." *Albemarle Corp. v. AstraZeneca UK Ltd*., 628 F.3d 643, 650–51 (4th Cir. 2010) (emphasis in original); *accord D&S Consulting, Inc. v. Kingdom of Saudi Arabia*, 961 F.3d 1209, 1213 (D.C. Cir. 2020)

(acknowledging the distinction between a "mandatory" clause which "requires that litigation proceed in a specific forum," and a "permissive" clause which allows "litigation to occur in a specified forum but does not bar litigation elsewhere" (internal quotation marks omitted)). The dividing line between "mandatory" or "exclusive" and "permissive" forum selection clauses is not a matter of formalism. *D&S Consulting*, 961 F.3d at 1214 ("No magic words . . . are required to establish a mandatory clause."). Instead, we examine the text of the clause for its plain meaning and read it in context of the full agreement. *Jabbour v. Bassatne*, 673 A.2d 201, 203 (D.C. 1996). In other words, "[w]hether a [forum selection] clause is mandatory or permissive is a matter of basic contract interpretation." *D&S Consulting,* 961 F.3d at 1213.

With these principles in mind, we examine the three-sentence paragraph of the ADI-King Carpentry contract containing a forum selection clause. The first sentence is a choice of law provision. The second sentence is a mediation provision. The third sentence is the forum selection clause. The paragraph reads in full:

> This Contract shall be governed by the law of the Commonwealth of Virginia. The parties agree that any claim arising out of or related to this agreement and the Project that ADI Construction of Virginia, LLC and Subcontractor are unable to resolve consensually shall first be submitted to mediation, which mediation shall be conducted in Fairfax County, Virginia, and such other place as the parties shall mutually agree. The parties further agree that if the mediation is unsuccessful, they hereby consent to personal jurisdiction and venue, for any action

arising out of breach or threatened breach of this Agreement in the Circuit Court in and for Fairfax County, Virginia.

The choice of law and mediation clauses appear to be mandatory: without qualification, the parties state that Virginia law "shall" be used and that they "shall" first try to resolve disputes via mediation. But the forum selection clause is written differently. It does not say that any action "shall" be brought in Fairfax County, Virginia. It states that the parties have "consent[ed] to" venue in Fairfax County.[3]

Consent is an "agreement, approval, or permission." *Black's Law Dictionary* (11th ed. 2019). Agreeing to one venue does not mean rejecting all others; "specific language of exclusion" is required to give such an agreement that meaning. *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007) ("A general maxim in interpreting forum-selection clauses is that an agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion." (internal quotation marks omitted) (emphasis in original)). The forum selection clause of the ADI-King Carpentry

---

[3] Because "standard choice of law provision[s] . . . [are] generally understood to incorporate only substantive law, not procedural law," we analyze the forum selection clause under our law, notwithstanding the choice of law clause directing reliance on Virginia law. *Olivarius v. Stanley J. Sarnoff Endowment for Cardiovascular Science, Inc.*, 858 A.2d 457, 463 (D.C. 2004) (internal quotation marks omitted).

contract contains no such language. For example, it does not say that the parties agree venue is "only" or "sole[ly]" or "exclusive[ly]" in Fairfax County, Virginia. *See BAE Systems Technology Solution & Services, Inc. v. Republic of Korea's Defense Acquisition Program Administration,* 884 F.3d 463, 472 (4th Cir. 2018)*, as amended* (Mar. 27, 2018) (explaining that in the absence of exclusionary language or context, a forum selection clause providing that disputes "shall be resolved through litigation and the Seoul Central Court shall hold jurisdiction" was permissive and not mandatory). Nor does it communicate by any other means that the contracting parties agreed to Fairfax County being the exclusive venue. The forum selection clause effectively provides that if either party files suit in Fairfax County, the other party waives any objection it might otherwise have on personal jurisdiction or venue grounds. But it does not bind either party to bring any suit in Fairfax County.

Accordingly, we conclude that the forum selection clause in the ADI-King Carpentry contract is permissive and that the Superior Court erred in concluding that venue for any breach of contract action was limited to Fairfax County, Virginia.

**III. Whether Claim to "Enforce[] Mechanic's Lien Against Undertaking" was Properly Dismissed For Failure to Follow Procedural Requirements Set Forth in the Subcontractor's Lien Statute**

The trial court dismissed King Carpentry's claim to "Enforce Mechanic's Lien against Undertaking Against 1345 K St[reet SE], ADI, and GAIC" because King Carpentry failed to fulfill a procedural requirement of the Subcontractor's Lien Statute. Specifically, the trial court determined that King Carpentry was required pursuant to D.C. Code § 40-303.13 (a)(1)(B) to record a notice of *lis pendens* against the property within ten days of filing suit and that its failure to do so compelled dismissal of its claim. King Carpentry concedes it did not comply with D.C. Code § 40-303.13 (a)(1)(B). But it argues that it was under no obligation to do so—indeed it could not—because after 1345 K Street SE and ADI filed an undertaking, there was no basis for King Carpentry to record a *lis pendens* against the property. *See* D.C. Code § 40-303.17 (allowing the filing of an "[u]ndertaking to discharge liens before suit"). The interaction of the procedural requirements of D.C. Code § 40-303.13(a)(1)(B) with D.C. Code § 40-303.17 presents a question of statutory interpretation that we review de novo. *See District of Columbia v. Place*, 892 A.2d 1108, 1110–11 (D.C. 2006).

We have often observed that statutory interpretation is a "holistic endeavor." *Office of the People's Counsel v. Public Service Commission*, 163 A.3d 735, 740

(D.C. 2017) (internal quotation marks omitted). That is unquestionably true in this case where, to understand how D.C. Code § 40-303.13(a)(1)(B) and D.C. Code § 40-303.17 interact, we must not only examine the particular text of these provisions, but understand how they fit into the Subcontractor's Lien Statute, D.C. Code § 40-303.01 et seq., as a whole.

A "lien" is "[a] legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied." *Black's Law Dictionary* (11th ed. 2019). The Subcontractor's Lien statute recognizes that subcontractors who do work on real property but are not compensated pursuant to the terms of their contract are creditors (just like contractors who are protected by the Mechanic's Lien statute, D.C. Code § 40-301.01 et seq.) and are entitled to a lien to ensure they get paid. D.C. Code § 40-303.01. A subcontractor's lien is statutorily created upon filing a notice with the Recorder of Deeds of the District of Columbia and serving the claim of the lien on the property owner. D.C. Code § 40-303.03. Thereafter, a subcontractor may enforce the lien by filing suit in equity, D.C. Code § 40-303.08, and if the subcontractor prevails, the court shall order the sale of the property and direct that the subcontractor be paid from the proceeds. D.C. Code § 40-303.09. But to pursue payment in this manner, the subcontractor must satisfy the procedural requirements of D.C. Code § 40-303.13, namely, filing suit within 180

days of recording its lien and recording, within 10 days of filing suit, a *lis pendens*, i.e., a "notice of pendency of action in accordance with [D.C. Code] § 42-1207(b)[4] in the land records." D.C. Code § 40-303.13.

Meanwhile, the property owner may take steps to unencumber the property. If a suit is already pending, the owner may either pay into the court registry "the amount claimed by the lienor, and such additional amount, to cover interest and costs, as the court may direct," or "[f]ile a written undertaking, with one or more sureties, to be approved by the court, to the effect that . . . they will pay the judgment that may be recovered, which may include interests and costs." D.C. Code §

---

[4] D.C. Code § 42-1207 is the *lis pendens* statute, which provides for notice to the public of pending litigation related to real property and safeguards plaintiffs' interest in that property. *Heck v. Adamson*, 941 A.2d 1028, 1029 & n.1 (D.C. 2008) ("The legal effect of *lis pendens* . . . is that nothing relating to the subject matter of the suit can be changed while it is pending and one acquiring an interest in the property involved therein from a party thereto takes such interest subject to the parties' rights as finally determined, and is conclusively bound by the results of the litigation." (internal quotation marks and brackets omitted)).

In relevant part, subsection (a) of the statute provides that "[t]he pendency of an action . . . affecting the title to . . . or asserting a . . . lien . . . in real property . . . in the District . . . shall not affect a party not a party thereto, unless a notice of the pendency of the action . . . is filed for recordation, as required by subsection (b) of this section." D.C. Code § 42-1207(a). Subsection (b) provides that a notice referred to in Subsection (a) shall be effective only in certain types of actions—those that "affect[] the title to . . . or assert[] a . . . lien . . . in real property . . . in the District"— and only if it contains specified information and is in writing, properly signed, and notarized. D.C. Code § 42-1207(b).

40-303.16(a)(1)–(2). "On the payment of the money into court, or the approval of the undertaking . . . , the property shall be released from the lien, and any money so paid in shall be subject to the final decree of the court." D.C. Code § 40-303.16(b).

Additionally, a property owner need not wait for the subcontractor to file suit to unencumber the property. Pursuant to D.C. Code § 40-303.17, an owner may, as 1345 K Street SE (with ADI) did in this case, offer "an undertaking . . . before any suit [is] brought in order to discharge the property from existing liens, in which case notice shall be given as aforesaid to the parties whose liens it is sought to have discharged." Once the suit is filed, "the same proceedings shall be had as above directed in relation to the undertaking to be given," and "said undertaking shall be to the effect that the owner and his said sureties will pay any judgment that may be rendered in any suit that may thereafter be brought for the enforcement of said lien." D.C. Code § 40-303.17. Unlike a suit to enforce a lien, which requires the owner of the property, the principal contractor, and all other lienors to be named parties, D.C. Code § 40-303.08, a suit to recover against an undertaking requires only the property owner to be named, D.C. Code § 40-303.18 (directing that if an undertaking is approved before a suit is filed, "such suit shall be a suit in equity against the owner, to which the sureties may be made parties")—i.e., the person (or entity) who filed

the undertaking and stands personally liable for any judgment, *see* D.C. Code § 40-303.16; *see also infra* note 6.

With this context, we return to the text of D.C. Code § 40-303.13(a)(1)(B)—"[a]ny person with a lien and who has recorded a valid notice of intent shall only enforce the lien by . . . [r]ecording, within 10 days of filing suit, a notice of pendency of action in accordance with § 42-1207(b) in the land records*"*—and consider if it has any application to King Carpentry in this case.  We conclude it does not.

First, King Carpentry, at the time it filed suit, was not a "person with a lien" within the meaning of D.C. Code § 40-303.13(a)(1)(B).  King Carpentry had no lien because 1345 K Street SE, along with ADI, had filed a consent petition for approval of an undertaking to serve as security, in lieu of the property, against any future judgment, and the trial court approved the undertaking.  *See supra* note 1.  Once the court granted their consent petition and released the property from the lien, King Carpentry lost its status as a lienor.

Second, King Carpentry did not sue to "enforce the lien" it no longer possessed.  Instead, it sued for "enforcement of [a] mechanic's lien *against [the] undertaking*."  King Carpentry explained in its complaint that "[p]ursuant to the

Consent Petition, which this Court granted, the Bond has been entered in the Recorder of Deeds for King Carpentry's Lien" and that "GAIC, as surety and issuer of the Bond, and ADI and 1345 K St[reet SE], as principals under the Bond, are subject to any final judgment in favor of King Carpentry." As a legal matter, this was entirely correct. Although King Carpentry no longer possessed a lien against the property, it still had a right of recovery under the Subcontractor's Lien statute, which provides that the substitution of an undertaking for a lien does not defeat the cause of action thereunder; it merely alters it from an in rem proceeding to an in personam action against the owner and any sureties. *See* D.C. Code § 40-303.17 (allowing an owner to file an undertaking before any suit is brought); D.C. Code § 40-303.18 ("If such an undertaking be approved before any suit [is] brought, such suit shall be a suit in equity against the owner, to which the sureties may be made parties.").[5]

---

[5] This distinction is apparent in decisions that predate the enactment of the Subcontractor's Lien statute in 1901. *Compare Lefler v. Forsberg*, 1 App. D.C. 36, 41 (D.C. Cir. 1893) ("The proceeding to fix and enforce the lien is in its nature a proceeding *in rem*."), *with Brown v. Waring*, 1 App. D.C. 378, 380 (D.C. Cir. 1893) (explaining that a plaintiff must still prove the "validity of [a discharged] lien . . . to recover the *personal judgment,* for the payment of which the bond or undertaking has been given and approved" (emphasis added)).

There is language in D.C. Code § 40-303.17 directing that, if "an undertaking as above mentioned" is offered before a suit is filed, the "same proceedings shall be had as above directed in relation to the undertaking to be given after the commencement of the suit." The trial court read this language to refer back to D.C. Code § 40.303.13 and thereby require compliance with D.C. Code § 40-303.13(a)(1)(B). As a historical matter, it is certain that the drafters of D.C. Code § 40-303.17 (which retains its language from 1901) were not thinking of the *lis pendens* provision, which was only added to the Subcontractor's Lien statute in 2005. *Compare* Law of March 3, 1901, ch. 854, §1251, 31 Stat. 1387, *and* Mechanics Lien Amendment Act of 2001, D.C. Council, Report on Bill 14-248 at 17 (Sept. 25, 2001), *with* Mechanic's Lien Amendment Act of 2005, D.C. Council, Report on Bill 16-105 at 14–15 (June 1, 2005). Furthermore, the plain language of D.C. Code § 40-303.17 is unambiguous as to its point of reference. The "undertaking as above directed" is the "written undertaking, with one or more sureties, to be approved by the court" in D.C. Code § 40-303.16; likewise the "same proceedings . . . as above directed in relation to the undertaking to be given after the commencement of the suit" refers back to D.C. Code § 40-303.16, which discusses

the procedure for filing an undertaking and discharging a lien after a lawsuit has been filed.[6]

Third and finally, as a party without a lien on the property, King Carpentry could not file a notice of *lis pendens* "in accordance with [D.C. Code] § 42-1207(b) in the land records." D.C. Code § 40-303.13. As set forth in D.C. Code § 42-1207, such a notice is appropriate and effective only when a plaintiff brings "an action . . . affect[ing] the title . . . or assert[ing] a . . . lien . . . in real property . . . in the District." *See supra* note 5.

For all these reasons, we conclude that King Carpentry, having filed its complaint after ADI and 1345 K Street SE successfully discharged the lien on the

---

[6] In their briefs, both King Carpentry and ADI address whether King Carpentry failed to comply with the requirement under D.C. Code § 40-303.08 to name as party defendants "all other persons who may have filed notices of liens," or whether that requirement is superseded by D.C. Code § 40-303.18 when an undertaking is filed discharging the lien on the property. This issue was litigated in Superior Court, but the trial court never ruled on it. It appears that the parties address this issue to forestall or encourage affirmance on other grounds. For the reasons discussed above, we conclude ADI's argument that King Carpentry failed to name the proper parties under D.C. Code § 40-303.08 is misguided: King Carpentry's action was not "a proceeding to enforce a lien," and the "same proceeding" language in D.C. Code § 40-303.17 does not refer back to the party naming requirements of D.C. Code § 40-303.08.

property, was not subject to the procedural requirement under D.C. Code § 40-303.13(a)(1)(B) to file a *lis pendens* within ten days of filing suit.

## IV. Conclusion

Based on the above analysis, we reverse the judgment in 19-CV-1162. We also reverse the judgment in 20-CV-422. As noted above, the trial court relied on the judgment in 19-CV-1162 to conclude that the complaint filed in 20-CV-422 was barred by res judicata. But reversal of a judgment terminates its res judicata effect. *See Colvin v. Howard University*, 257 A.3d 474, 484 n.10 (D.C. 2021) (quoting *Adams v. Jonathan Woodner Co.*, 475 A.2d 393, 397 (D.C. 1984)) ("A judgment based upon issue preclusion or claim preclusion is no longer valid when the decision upon which the court relied in applying either of the doctrines has been reversed." (brackets omitted)). We remand for further proceedings consistent with this opinion.

*So ordered*.